KENNETH C. JOHNSTON
kjohnston@johnstonpratt.com
ROBERT W. GIFFORD
rgifford@johnstonpratt.com
Johnston Pratt PLLC
1717 Main Street, Suite 3000
Dallas, Texas 75201
Telephone: (214) 974-8000

CHRISTOPHER D. SULLIVAN (148083)
csullivan@diamondmccarthy.com
DIAMOND McCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA 94111
Telephone: (415) 692-5200

*Attorney for Plaintiffs Jennifer Bond,*
*David Haury, Alberto R. Marzana, John Rufty, III,*
*Ryan Young And Elisa Gaudio, individually*
*and on behalf of all others similarly situated*

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

#### SAN JOSE DIVISION

| | |
|---|---|
| **JENNIFER BOND, DAVID HAURY, ALBERTO R. MARZANA, JOHN RUFTY, III, RYAN YOUNG AND ELISA GAUDIO, individually and on behalf of all others similarly situated,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**APPLE INC., a California corporation,**<br><br>**Defendants.** | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR:**<br>1. **Fraudulent Misrepresentation/Omission**<br>2. **Negligent Misrepresentation**<br>3. **Trespass to Chattels**<br>4. **Unjust Enrichment**<br>5. **Violation of the California's Unfair Competition Law**<br>6. **Violation of the California's False Advertising Law**<br>7. **Breach of Express Warranty Under the Magnuson-Moss Warranty Act**<br>8. **Breach of the *Consumer Protection Act, 2002* and *Competition Act***<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs, individually and on behalf of the Classes defined below, file this Class Action Complaint against Apple, Inc., alleging as follows:

### NATURE OF THE ACTION

1.      Apple promised that its recent iOS 10 and iOS 11 software updates to the iPhone 6 and iPhone 7 models would improve those devices' performance and it strongly encouraged its customers to accept those updates. But Apple didn't tell its customers that it had intentionally designed those software updates to slow the devices' processing speed to correct a battery defect. Apple then happily took its customers' money when the customers, dissatisfied with their now-slower devices, purchased new and more expensive iPhones. Apple came clean only this month under public pressure, admitting its software updates slowed processor speed. Now Plaintiffs and Class Members must either purchase new phones for hundreds, if not thousands, of dollars or continue to struggle with their slowed devices.

2.      Plaintiffs assert a class action on behalf of owners of the iPhone SE, iPhone 6, iPhone 6s, iPhone 6 Plus, iPhone 6s Plus (collectively, the "iPhone 6"), and the iPhone 7 and iPhone 7 Plus (collectively, the "iPhone 7") (together, "Affected Phones") whose devices were harmed by Apple's updating of their devices' software to iOS 10.2.1, 10.3, 10.3.1, 10.3.3 (the "iOS 10 Update") and to iOS 11.0.1, 11.02, 11.03, 11.1.1, 11.1.2, 11.2, and 11.2.1 (the "iOS 11 Update," and collectively, the "iOS 10 and iOS 11 Updates")—those updates were released between January 23, 2017 and December 13, 2017.

### THE PARTIES

3.      Plaintiff Jennifer Bond is a citizen of the United States, residing in Seminole, Oklahoma.

4.      Plaintiff David Haury is a citizen of the United States, residing in West Linn, Oregon.

5.      Plaintiff Alberto R. Marzana is a citizen of the United States, residing in Fort Collins, Colorado.

6. Plaintiff John Rufty, III is a citizen of the United States, residing in Hickory, North Carolina.

7. Plaintiff Ryan Young is a citizen of the United States, residing in Fort Worth, Texas.

8. Plaintiff Elisa Gaudio is a citizen of Canada residing in the City of Bolton, in the Province of Ontario ("Canadian Plaintiff").

9. Plaintiffs bring this action on their own behalf and on behalf of all others similarly situated, namely all other individuals who have purchased the iPhone SE, iPhone 6, or iPhone 7 and received the iOS 10 Update or iOS 11 Update.

10. Defendant Apple, Inc. is a corporation organized and existing under the laws of the State of California with its principal place of business at 1 Infinite Loop, Cupertino, California.

**JURISDICTION AND VENUE**

**A.      The State and National Classes**

11. This Court has original subject matter jurisdiction over the claims asserted by the U.S. state citizen class plaintiffs pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because those class members are citizens of states different from Defendant's state.

12. This Court has original subject matter jurisdiction over the claims asserted by the Canadian class plaintiffs pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(B), because those class members are citizens or subjects of a foreign state and Defendant is a citizen of a U.S. state.

13. None of the putative class members are citizens of Defendant's state:  California.

14. The putative number of members of all proposed plaintiff classes in the aggregate exceeds 100.

15. The aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

16.     This Court has personal jurisdiction over Defendant because it is incorporated in the State of California and is headquartered in Cupertino, California.

17.     Venue in this district is appropriate pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the harm of the Class Members occurred in this District. Additionally, Defendant's principal place of business is in this judicial district, and Defendant conducts a large amount of its business in this District.

### INTRADISTRICT ASSIGNMENT

18.     Pursuant to Local Civil Rule 3-2(c), assignment to the San Jose Division is appropriate because a substantial part of the acts or omissions giving rise to the claims alleged herein occurred at Defendant's headquarters, which is located in Cupertino, Santa Clara County, California.

### EXTRATERRITORIAL APPLICATION OF LAW

19.     As also pleaded below, State Subclass and Canadian Class members, as defined below, are suing to enforce their rights pursuant to certain California laws, including California's Unfair Competition Law and California's False Advertising Law. Application of California law to the claims of the State Subclasses and Canadian Class members is appropriate because California's interest in this litigation is superior that of any other state. Furthermore, California courts have held these laws to convey rights to non-California citizens harmed by violations of these laws caused by conduct occurring in, or emanating from, California.[1]

---

[1] *See, e.g.*, *Sullivan v. Oracle Corp.*, 254 P.3d 237 (2011); *In re iPhone 4S Consumer Litigation*, No. C12–1127 CW, 2013 WL 3829653 (N.D.Cal. July 23, 2013); *Weshba v. Apple Computer, Inc.*, 110 Cal. Rptr. 2d 145 (Cal. App. 6th Dist. 2001) (disapproved of on other grounds by *Hernandez v. Restoration Hardware, Inc.*, S233983, 2018 WL 577716 (Cal. Jan. 29, 2018)).

## SUBSTANTIVE ALLEGATIONS

### *The Core of Apple's Business: New Smartphone Sales*

20.     Apple generates the majority of its sales from the iPhone. Sales from new iPhones alone accounted for 55 percent of total net sales during the third quarter of 2017 and 64 percent of total net sales for the first nine months of 2017.

21.     Journalists have recognized the iPhone's importance to Apple's business, stating that Apple's "success is derived from selling brand-new high-end smartphones consistently month after month" and describing it as "the single most important product for the company."

### *Apple's iPhone 6 was Plagued with Unexpected Shutdown Issues*

22.     Despite the iPhone's importance, Apple has struggled with problems in its flagship product.

23.      Over the past two years, Apple's iPhone 6 users have suffered from their devices shutting down unexpectedly, despite displaying sufficient battery levels. Admitted defects in the iPhone 6's and iPhone 6s' batteries caused those shutdown issues.

24.     Consumers worldwide complained of the unexpected shutdown. In November 2016, a Chinese consumer association requested that Apple investigate "a considerable number" of reports by iPhone 6 and iPhone 6s users that the devices were shutting off despite displaying high battery levels and in room temperature environments.

25.     Just a few weeks later, Apple acknowledged that "a very small number of iPhone 6s devices may unexpectedly shut down" due to battery issues. It admitted, on its Chinese-language website only, that this problem had been caused by "a battery component's" unduly long exposure to "controlled ambient air" during manufacture between September and October 2015.

26.     Apple offered to replace batteries for a limited number of iPhone 6s manufactured between September and October 2015. To obtain those replacement batteries, Apple required its customers to back up their data, erase the "data and setting on their devices," bring their phones

to instore locations, and pay to repair other unrelated damage to the phones. Apple did not extend its warranty for the repaired phones.

27.     Despite Apple's claims that this battery defect affected only "a very small number" of devices, Apple employees reported to journalists that they were "seeing anywhere from 15 to 30 battery replacements every day" in late 2016—*Fortune* magazine described the iPhone 6 and iPhone 6s "battery issue" as "endemic."

28.     Not surprisingly, Apple's limited battery replacement did not resolve the unexpected shutdown problem. iPhone 6 and iPhone 6s owners continued to suffer from unexpected shutdowns, including owners who purchased devices manufactured outside of September through October 2015.

29.     On January 23, 2017, Apple released its iOS 10.2.1 software update for iPhone 5 and later generations.

30.     Apple did not immediately disclose to consumers that it intended the iOS 10.2.1 update to fix the shutdown problem. It waited until February 2017 to disclose that the update had "made improvements to reduce occurrences of unexpected shutdowns."

31.     But Apple kept hidden what exactly those "improvements" were.

***Apple Admitted its iOS 10 and iOS 11 Updates Slowed the iPhone's Processing Speed***

32.     iPhone owners with the iOS 10 and 11 Updates repeatedly complained that the devices were running more slowly after the updates.

33.     Spurred by those complaints, in late December 2017, PrimateLabs, a company that creates software to measure computer processing speed, released the results of tests on the iPhone 6s and the iPhone 7. Those tests showed that the introduction of iOS 10.2.1 on the iPhone 6s and iOS 11.2.1 on the iPhone 7 caused those devices' processing speed to slow compared to earlier operating systems.

34.     Upon information and belief, the introduction of each iOS update after iOS 10.2.1 similarly caused the iPhone SE, iPhone 6, and iPhone 7 to operate more slowly.

35.     In response, on December 20, 2017, Apple publicly admitted that the iOS10 and iOS11 Updates slowed down the iPhone 6 and iPhone 7, stating:

> Our goal is to deliver the best experience for customers, which includes overall performance and prolonging the life of their devices. Lithium-ion batteries become less capable of supplying peak current demands when in cold conditions, have a low battery charge or as they age over time, which can result in the device unexpectedly shutting down to protect its electronic components.

> Last year we released a feature for iPhone 6, iPhone 6s and iPhone SE to smooth out the instantaneous peaks only when needed to prevent the device from unexpectedly shutting down during these conditions. We've now extended that feature to iPhone 7 with iOS 11.2, and plan to add support for other products in the future.

36.     Thereafter, on December 28, 2017, Apple formally "apologized" to its customers for "the way [they] handle[d] performance for iPhones with older batteries and how [they] communicated that process." Additionally, Apple made the following admission:

> About a year ago in iOS 10.2.1, we delivered a software update that improves power management during peak workloads to avoid unexpected shutdowns on iPhone 6, iPhone 6 Plus, iPhone 6s, iPhone 6s Plus, and iPhone SE. With the update, iOS dynamically manages the maximum performance of some system components when needed to prevent a shutdown. While these changes may go unnoticed, in some cases users may experience longer launch times for apps and other reductions in performance. (Emphasis added.)

37.     In short, Apple had "improved" its iPhone SE, iPhone 6 and iPhone 7 by slowing down their processing speeds to prevent unexpected shutdowns—shutdowns caused by problems in Apple's battery.

38.     Notably, Apple made this "improvement" to the iPhone 7 even though there had not been extensive complaints about unexpected shutdowns of the iPhone 7.

39.     Upon information and belief, replacing the battery in the iPhone SE, iPhone 6, and iPhone 7 prevents the processing speed from slowing because the iOS 10 and iOS 11 Updates only slow processing speed when battery condition decreases past a certain point.

40.     Apple did not disclose that battery replacement will prevent slower processing speed.

41.     And, until its recent admissions, Apple had never previously disclosed that the iOS 10 Updates and iOS 11 Updates would slow down its customers' iPhones. In fact, Apple had promised the opposite.

### Apple Promised its iOS 10 and iOS 11 Updates Would Improve the User's iPhone.

42.     A key component of the iPhone is its operating system, which Apple regularly updates.

43.     Apple represents to its customers that those updates will benefit their iPhones.

44.     Apples claims that its current iOS 11 operating system "makes iPhone better than before" and that with "iOS 11, iPhone and iPad are the most powerful, personal, and intelligent devices they've ever been."

45.     Apple previously claimed that the iOS 10 operating system "make[s] everything you love about your iPhone and iPad even better."

46.     Apple, incredibly, promised that "in iOS 10, accessing the information you need is *easier and quicker* than ever"—even though Apple admittedly designed iOS 10.2.1 to slow processing speeds.

47.     Apple further touted the benefits of each iteration of those operating systems.

48.     Specifically, Apple represented that:

    a.      iOS 10.2.1 "includes bug fixes and improves the security of your iPhone . . ." and also "improves power management during peak workloads to avoid unexpected shutdowns on iPhones." Nowhere did Apple disclose that avoiding unexpected shutdowns required slower processors.

    b.      iOS 10.3.1. offered "new features" and improvements to various applications

    c.      iOS 10.3.2 and 10.3.3 included "bug fixes" and improved "the security of your iPhone . . . ."

    d.      iOS 11.0.1, iOS 11.0.2, and iOS 11.0.3 included "bug fixes" and "improvements" to various iPhone functions.

    e.      iOS 11.1, iOS 11.1.1, iOS 11.1.2, iOS 11.2, and iOS 11.2.1 similarly include numerous "bug fixes" and improvements in iPhone functionality.

49. In addition to proclaiming the software updates' benefits, Apple also made it very difficult for its customers to avoid the iOS 10 Updates and iOS 11 Updates.

50. The iPhone SE, iPhone 6, and iPhone 7 devices repeatedly reminded Plaintiffs and class members to update their software until the owner agreed to accept the updates.

51. Additionally, if Plaintiffs and class members did not update, applications for their devices would ultimately become unusable.

***Plaintiffs Suffered Damages from the iOS 10 and iOS 11 Updates.***

52. Plaintiffs and Class Members own or have previously owned iPhone SE, iPhone 6s, or iPhone 7s during the time Apple released the iOS 10 and iOS 11 Updates.

53. As a result of the iOS 10 and iOS 11 Updates, Plaintiffs' iPhones operated more slowly and their functionality was materiality impaired. The iPhones suffered problems with applications freezing, forced rebooting, and delayed response time.

54. Plaintiffs attempted to address those problems by purchasing new iPhones, at the cost of hundreds of dollars, and by purchasing accessory equipment, such as new chargers, in an attempt to fix their devices' issues.

55. Plaintiffs were unaware of the slowed processing speed caused by the iOS10 and iOS 11 Updates.

56. Had they been aware of the decreased processing speed caused by those updates, Plaintiffs would have purchased different, non-Apple, phones, refused to accept the updates, or purchased new batteries to avoid the processing speed slowdown.

57. Defendant's wrongful actions directly and proximately caused the loss of value to Plaintiffs' and Class Members' iPhones causing them to suffer, and continue to suffer, economic damages and other harm for which they are entitled to compensation, including:

      a. Replacement of old phone;

      b. Loss of use;

      c. Loss of value;

      d. Purchase of new batteries;

e.    Ascertainable losses in the form of deprivation of value of their iPhones; and

f.    Overpayments to Defendant for iPhones in that a portion of the price paid for each such iPhone by Plaintiffs and Class Members to Defendant was for Defendant to purposefully not interfere with the usage of their iPhones.

### CLASS ACTION ALLEGATIONS

58.    Plaintiffs bring this action on their own behalf and pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3), and (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of the provisions of Rule 23.

**A.    National Class**

59.    United States Plaintiffs seek certification of a nationwide class defined as follows:
All persons residing in the United States who own or have owned the iPhone SE, iPhone 6, or iPhone 7 who installed received any of the iOS 10 or iOS 11 Updates.

**B.    State Subclasses**

60.    In the alternative to the Nationwide Class, and pursuant to Federal Rule of Civil Procedure, Rule 23(c)(5), state-specific Plaintiffs intend to represent the following state classes (the "State Subclasses"). Specifically, the State Subclasses consist of each of the following:

**Colorado Plaintiffs**

All persons residing in Colorado who own or have owned the iPhone SE, iPhone 6, or iPhone 7 who installed any of the iOS10 or iOS 11 Updates (the "Colorado Subclass"). Alberto R. Marzana is the representative plaintiff for the Colorado Subclass.

**North Carolina Plaintiffs**

All persons residing in North Carolina who own or have owned the iPhone SE, iPhone 6, or iPhone 7 who installed any of the iOS10 or iOS 11 Updates (the "North Carolina Subclass"). John Rufty, III is the representative plaintiff for the North Carolina Subclass.

### Oklahoma Plaintiffs

All persons residing in Oklahoma who own or have owned the iPhone SE, iPhone 6, or iPhone 7 who installed any of the iOS10 or iOS 11 Updates (the "Oklahoma Subclass"). Jennifer Bond is the representative plaintiff for the Oklahoma Subclass.

### Oregon Plaintiffs

All persons residing in Oregon who own or have owned the iPhone SE, iPhone 6, or iPhone 7 who installed any of the iOS10 or iOS 11 Updates (the "Oregon Subclass"). David Haury is the representative plaintiff for the Oregon Subclass.

### Texas Plaintiffs

All persons residing in Texas who own or have owned the iPhone SE, iPhone 6, or iPhone 7 who installed any of the iOS10 or iOS 11 Updates (the "Texas Subclass"). Ryan Young is the representative plaintiff for the Texas Subclass.

**C.    Canadian Class**

61.    Canadian Plaintiff intends to represent the following Canadian Class (the "Canadian Class," and, together with the Nationwide Class and State Subclasses the "Classes" or "Class Members"). Specifically, the Canadian Class is defined as follows:

All persons residing in Canada, excluding Quebec, who own or have owned the iPhone SE, iPhone 6, or iPhone 7 that received any of the iOS10 or iOS 11 Updates (the "Canadian Class"). Elisa Gaudio is the representative plaintiff for the Canadian Class.

62.    Canadian Plaintiff and the Canadian Class ask this Court to adopt the cross-border notice protocols set forth by the American Bar Association in August 2011.[2]  Those protocols have been used successfully by U.S.-based courts to ensure the provision of adequate notice and opt-out opportunities to Canadian class members.

---

[2] *See* American Bar Association, *Protocol on Court-to-Court Communications in Canada-U.S. Cross-Border Class Actions and Notice Protocol: Coordinating Notice(s) to the Class(es) in Multijurisdictional Class Proceedings* (Aug. 8-9 2011), *available at* https://www.americanbar.org/content/dam/aba/directories/policy/2011_am_101c.authcheckdam.pdf (last visited Jan. 26, 2018).

63.    Excluded from each of the above Classes are Defendant, including any entity in which Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by Defendant, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendant. Also excluded are the judges and court personnel in this case and any members of their immediate families. Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that the Classes should be expanded or otherwise modified.

64.    **Numerosity.** Fed. R. Civ. P. 23(a)(1). The members of the Classes (the "Class Members") are so numerous that the joinder of all members is impractical. Defendant has sold—and continues to sell—tens of millions of Affected Phones throughout the United States and Canada. While the exact number of Class Members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are thousands of Class Members, at least. Class Members are readily identifiable from information and records in Defendants' possession, custody or control.

65.    **Commonality.** Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Classes, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a.    Whether Defendant purposefully or knowingly designed the iOS 10 and iOS 11 Updates to slow down and otherwise negatively affect the Affected Phones' performance;

    b.    Whether Defendant's failure to disclose the iOS 10 and iOS 11 Updates' decreases of iPhone processing speed while touting those Updates' benefits constitutes a fraudulent misrepresentation;

    c.    Whether Defendant's statements concerning the performance-enhancing features of the iOS 10 and iOS 11 Updates, while knowing the updates also contained performance-degrading features, constitute negligent misrepresentation;

    d.    Whether Defendant's actions constitute trespass to chattel;

    e.    Whether Defendant is liable to Plaintiffs and Class Members for unjust enrichment;

f.    Whether Defendant's conduct and business practices constitute acts of unfair competition in violation of California's Unfair Competition Law;

g.    Whether Defendant's conduct and business practices constitute acts of false advertising in violation of California's False Advertising Law;

h.    Whether Defendant breached any express or implied warranty; and

i.    Whether Plaintiffs and the Classes are entitled to damages, civil penalties, or punitive damages.

66.    Additionally, with respect to the Canadian Class, there exist questions of law and fact common to all class members that predominate over any questions affecting only individual Class Members.  Those common questions of law and fact include, without limitation and in addition to the common questions identified above, whether Defendant's actions constitute false, misleading or deceptive representations pursuant to sections 14 or 17 of the Canadian *Consumer Protection Act*, 2002 (S.O. 2002) or section 52 of the Canadian *Competition Act*, (R.S.C., 1985, c. C-34), or any of the parallel provincial laws.[3]

67.    **Typicality.** Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of those of other Class Members. Further, each representative plaintiff's claims are typical of those of the members of their respective Class or State Subclass. Each Class Member suffered damages from the loss of use and value of the iPhone SE, iPhone 6, or iPhone 7 device because of the performance slowdowns. The injuries of the Plaintiff and Class are identical and Plaintiffs'

---

[3] Specifically, those provincial laws are:  *Fair Trading Act*, R.S.A. 1000. C. F-2 (Alberta); *Business Practices and Consumer Protection Act*, S.B.C. 2004, c. 2 (British Columbia); *The Business Practices Act*, C.C.S.M. c. B120, c. 2 and *The Consumer Protection Act*, C.C.S.M. c. C200 (Manitoba); *Consumer Product Warranty and Liability Act*, S.N.B. 1978, c. C-18.1 (New Brunswick); *Consumer Protection and Business Practices Act*, S.N.L. 2009, c. C-31.1 (Newfoundland and Labrador); *Consumer Protection Act*, R.S.N.W.T. 1988, c. C-17 (Northwest Territories); *Consumer Protect Act*, R.S.N.S., c. 92 (Nova Scotia); *Consumer Protection Act*, R.S.N.W.T. (Nu) 1988, c. C-17 (Nunavut); *Consumer Protection Act, 2002*, S.O. 2002, c. 30, Sched. A (Ontario); *Business Practices Act*, R.S.P.E.I. 1988, c. B-7 (Prince Edward Island); *The Consumer Protection and Business Practices Act*, S.S. 2014, c. C-30.2 (Saskatchewan); *Consumers Protection Act*, R.S.Y. 2002, c. 40 (Yukon).  On information and belief, the source of which is Canadian co-counsel at the McKenzie Lake law firm located in Ontario, each of these provincial parallel laws are treated by Canadian courts as having, in relevant part, elements and defenses legally equivalent to the national *Consumer Protection Act* and *Competition Act*, described in text above.

claims for relief are based upon the same legal theories as the claims of other Class Members.

68.     ***Adequacy of Representation.*** Fed. R. Civ. P. 23(a)(4). Plaintiffs will fairly and adequately represent and protect the interests of the members of their respective Classes. Plaintiffs have retained competent counsel experienced in litigation of class actions and complex civil litigation who will vigorously prosecute this litigation. Plaintiffs' interests are not antagonistic or in conflict with the Class Members' interests.

69.     ***Superiority of Class Action (National Class and State Subclasses).*** Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all the members of the National Class and State Subclasses is economically and procedurally impracticable. Additionally, resolving this controversy through a class action avoids the possibility of inconsistent or conflicting adjudications of the asserted claims. Further, damages for any individual Class Member will be likely insufficient to justify the cost of litigation so, without class treatment, Defendant's violations of law inflicting substantial aggregate damages would lack a remedy.

70.     ***Superiority of Class Action (Canadian Class).*** Fed. R. Civ. P. 23(b)(3). Like the National Class and State Subclasses, the Canadian Class is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members of the Canadian Class is economically and procedurally impracticable. Additionally, resolving this controversy through a class action avoids the possibility of inconsistent or conflicting adjudications of the asserted claims. Further, damages for any individual Class Member will be likely insufficient to justify the cost of litigation so, without class treatment, Defendant's violations of law inflicting substantial aggregate damages would lack a remedy.

71.     Additionally, this Court is in a superior position to interpret and apply California's Unfair Competition Law and California's False Advertising Law, both of which

have been held by California courts to convey rights to non-California citizens harmed by violations of these laws caused by conduct occurring in, or emanating from, California.[4]

72.     Additionally, this Court's procedural safeguards for plaintiffs are superior to those of Canadian courts.  On information and belief, the source of which is Canadian co-counsel at the McKenzie Lake firm in Ontario, Canadian plaintiffs pursuing analogue claims to those asserted in this complaint would ordinarily have access to no more than one deposition of one Apple representative, lasting no more than one day.

73.     Additionally, on information and belief, the source of which is Canadian co-counsel at the McKenzie Lake firm in Ontario, Canadian courts will give preclusive effect to a class judgment rendered by a United States District Court because a class action that meets the requirements of Federal Rule of Civil Procedure 23 presumptively satisfies the Canadian principles of "real and substantial connection" and "order and fairness."[5]

74.     The Canadian Class members also have a "real and substantial connection" with California because Defendant's alleged conduct occurred in, and emanated from, Defendant's headquarters in California.

75.     The Canadian Class also satisfies the Canadian principle of "order and fairness" because satisfaction of the Federal Rule of Civil Procedure 23 procedural safeguards ensures adequacy of representation for the class, adequacy of notice to class members, and adequate opportunity to opt out:

        a.     as detailed above, Canadian Plaintiff and the Canadian Class members
               would be adequately represented in this action;

---

[4] *See, e.g.*, *Sullivan v. Oracle Corp.*, 254 P.3d 237 (2011); *In re iPhone 4S Consumer Litigation*, No. C12–1127 CW, 2013 WL 3829653 (N.D.Cal. July 23, 2013); *Wershba v. Apple Computer, Inc.*, 110 Cal. Rptr. 2d 145 (Cal. App. 6th Dist. 2001) (disapproved of on other grounds by *Hernandez v. Restoration Hardware, Inc.*, S233983, 2018 WL 577716 (Cal. Jan. 29, 2018)).

[5]   *Currie v. McDonald's Restaurants of Canada Ltd.* (2005) 74 O.R. (3d) 321 (C.A.).

    b.      notice given in accordance with Federal Rule of Civil Procedure Rule 23(c)(2)(b)[6] and the American Bar Association's cross-border notice protocols will provide adequate notice to Canadian Class members;

    c.      on information and belief, Defendant is in possession of information and records that identify all Canadian Class members in order to effect notice.

    d.      notice given in accordance with Federal Rule of Civil Procedure Rule 23(c)(2)(b)[7] and the American Bar Association's cross-border notice protocols will clearly and concisely inform the Canadian Class members of their opportunity to opt out of this action.

76.    Accordingly, the Canadian courts are very likely to give preclusive effect to any class judgment rendered by this Court, and recognize and enforce the Canadian Class as an opt-out class.  For that reason, a class action is superior to other available methods for the fair and efficient adjudication of this controversy as to the members of the Canadian Class.[8]

77.    The inclusion of putative Canadian Class members in this complaint is in the best interests of all putative Canadian Class members because in doing so, they will be treated in the same manner as the National Class and State Subclass members, which provides fairness and continuity among all putative class members in both the United States and Canada.  Further, the goals of efficiency and practical economy are met where only one Court will hear similar allegations of fact and law against the same Defendant.

---

[6] FED. R. CIV. P. 23(c)(2)(B) ("For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.").

[7] FED. R. CIV. P. 23(c)(2)(B) ("For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.").

[8] *See, e.g.*, *Willcox v. Lloyds TSB Bank, PLC*, CV 13-00508 ACK-RLP, 2016 WL 8679353, at *9 (D. Haw. Jan. 8, 2016); *Anwar v. Fairfield Greenwich Ltd.*, 289 F.R.D. 105, 114-21 (S.D.N.Y. 2013) (vacated on other grounds); *In re Alstom*, 253 F.R.D. at 282; *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 95 (S.D.N.Y. 2007); *In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 291, 301 (D. Del. 2003).

CAUSES OF ACTION

**COUNT ONE**
**Fraudulent Misrepresentation/Omission**
**(On Behalf of the Nationwide Class, or alternative, the State Subclasses, and Canadian Class)**

78.     Plaintiffs incorporate and reallege the substantive allegations contained in each and every paragraph of this Complaint.

79.     Defendant knowingly made material misrepresentations about the iOS 10 and iOS 11 Updates Plaintiffs and Class Members. The misrepresentations were false because they only highlighted the positive aspects of the iOS 10 and iOS 11 Updates without also disclosing the updates' performance-degrading, negative effects.

80.     Specifically, Defendant represented that iOS 10 operating system "make[s] everything you love about your iPhone and iPad even better," that and "in iOS 10, accessing the information you need is easier and quicker than ever before." Defendant knew, however, that the subsequent iOS 10.2.1 update would actually slow the Affected Phones' processing speed, making "accessing the information you need" slower than before.

81.     Defendant further represented that iOS 10.2.1 "improves power management during peak workloads to avoid unexpected shutdowns on iPhones" but failed to disclose the "improvement" was to reduce the Affected Phones' processing speed.

82.     Additionally, Defendant represented that its iOS 11 operating system "makes iPhone better than before" and that with "iOS 11, iPhone and iPad are the most powerful, personal, and intelligent devices they've ever been." But Defendant's subsequent iOS 11.2 update weakened the Affected Phones' processing power.

83.     Furthermore, Defendant made fraudulent omissions of facts within its knowledge to the Plaintiffs and Class Members, namely that the iOS 10 and iOS 11 Updates would cause the Affected Phones to run more slowly and that the decrease in processing speed could be avoided by the purchase of a new battery (the "Concealed Facts").

84.     Specifically, Defendant has recently admitted that the iOS 10 and iOS 11 Updates deteriorated the performance of the Affect Phones by causing:

a.     Longer app launch times;

b.     Lower frame rates while scrolling;

c.     Backlight dimming;

d.     Lower speaker volume;

e.     Gradual frame rate reductions in some apps;

f.     Disabling the camera flash; and

g.     Apps refreshing in background may require reloading upon launch.

85.     The Concealed Facts were material because the decrease in processing speed significantly impacted the functionality of Plaintiffs' and Class Members' iPhones.

86.     By its misrepresentations and omissions, Defendant, upon information and belief, intended to induce Plaintiffs and Class Members to purchase newer iPhone models to increase profits and improve Defendant's business as a whole.

87.     Plaintiffs and Class Members justifiably relied on Defendants' misrepresentations and omissions and were injured as a result of acting without that knowledge. Specifically, Plaintiffs and Class Members unnecessarily purchased newer iPhone models, purchased other Apple accessories in an attempt to restore processing speed, or suffered unnecessarily prolonged loss of the use and function of their devices which could have been remedied by the purchase of a new battery.

88.     Plaintiffs' and Class Members' reliance on Defendant's representations and omissions was a substantial factor in causing Plaintiffs' and Class Members' harm.

## COUNT TWO
### Negligent Misrepresentation
**(On Behalf of the Nationwide Class, or alternative, the State Subclasses, and Canadian Class)**

89.     Plaintiffs fully incorporate and reallege the substantive allegations contained in each and every paragraph of this Complaint.

90.     Defendants made misrepresentations of existing material fact about the Affected Phones for the guidance of Plaintiffs and Class Members. Specifically, Defendant represented

that iOS 10 operating system "make[s] everything you love about your iPhone and iPad even better," that and "in iOS 10, accessing the information you need is easier and quicker than ever before." Defendant's subsequent iOS 10.2.1 update, however, slowed the Affected Phones' processing speed, making "accessing the information you need" slower than before.

91.     Additionally, Defendant represented that its iOS 11 operating system "makes iPhone better than before" and that with "iOS 11, iPhone and iPad are the most powerful, personal, and intelligent devices they've ever been." But Defendant's subsequent iOS 11.2 update weakened the Affected Phones' processing power.

92.     Defendant made these statements with without reasonable grounds for believe them to be true. Specifically, Defendant presented the iOS 10 and iOS 11 Updates as containing only performance-enhancing features, all while knowing the updates also contained performance-degrading features that would materially reduce the Affected Phones' processing speed.

93.     Defendant intended to induce reliance on such misrepresentation so that Plaintiffs and Class Members would install the updates, become increasingly displeased with the newly-slowed iPhone's performance, and eventually opt to purchase a newer iPhone model, rather than simply purchasing a new battery for their devices.

94.     Plaintiffs and Class Members justifiably relied on Defendants' representations. It was reasonable for Plaintiffs and Class Members to Defendant's representations because Defendant withheld material facts concerning the iOS 10 and iOS 11 Updates that were not capable of being discovered by Plaintiffs and Class Members through independent inquiry or investigation.

95.     Plaintiffs and Class Members were injured as a result of so relying. Specifically, Plaintiffs and similarly situated Class Members unnecessarily purchased newer iPhone models, purchased other Apple accessories in an attempt to restore processing speed, or suffered unnecessarily prolonged loss of their devices' loss of use and function which could have been remedied by the purchase of a new battery.

### COUNT THREE
### Trespass to Chattels
### (On Behalf of the Nationwide Class, or alternative, the State Subclasses, and Canadian Class)

96.    Plaintiffs incorporate and reallege the substantive allegations contained in each and every paragraph of this Complaint.

97.    Plaintiffs and Class Members own or have previously owned one or more of the Affected Phones during the time Apple released the iOS 10 and iOS 11 Updates.

98.    Defendant intentionally interfered with Plaintiffs' and Class Members' iPhones by causing Plaintiffs and Class Members to download and install performance-degrading features that were concealed within iOS 10 and iOS 11 Updates. Upon installation, the iOS 10 and iOS 11 Updates materially impaired Plaintiffs' and Class Members' iPhones' performance and functionality by reducing the Affected Phones' processing speed.

99.    Importantly, Plaintiffs and Class Members never expressly or impliedly assented to Defendant interfering with their iPhones and, indeed, could not so assent, because Defendant never informed them that the iOS 10 and iOS 11 Update would decrease their phones' processing speed.

100.    Defendant intentionally interfered with Plaintiffs' and Class Members' use and possession of the Affected Phones and thereby proximately caused Plaintiffs and Class Members economic damages and other harm, including, but not limited to, loss of use and enjoyment of their iPhones due to impairment of its functionality, loss of value, loss of use, and losses in the form of costs to upgrade or otherwise replace their iPhones.

### COUNT FOUR
### Unjust Enrichment
### (On Behalf of the Nationwide Class, or alternative, the State Subclasses, and Canadian Class)

101.    Plaintiffs incorporate and reallege the substantive allegations contained in each and every paragraph of this Complaint.

102.     Defendant has received monetary benefits from Plaintiffs and Class Members in the form of payments made for the purchase of one or more Affected Phones.

103.     Because Defendant intentionally slowed and otherwise reduced the Affected Phones functionality, Plaintiffs and Class Members believed it was necessary to replace their "obsolete" Affected Phones with newer, more expensive iPhones. Plaintiffs and Class Members therefore conferred additional monetary benefit on Defendant.

104.     Defendant, through the fraudulent statements and omissions detailed above, has unlawfully received monetary and other benefits at Plaintiffs' and Class Members' expenses. As a result, Defendant has been unjustly enriched by retaining the revenues from such purchases.

105.     Defendant's retention of these monetary benefits would be inequitable and unjust under the circumstances.

106.     Accordingly, Defendant should be ordered to disgorge these monetary benefits as restitution to Plaintiffs and Class Members, to the extent and in the amount deemed appropriate by the Court.

### COUNT FIVE
**Violation of the California's Unfair Competition Law,
CAL. BUS. & PROF. CODE § 17200, *et seq.*
(On Behalf of the Nationwide Class, or alternative, the State Subclasses, and Canadian Class)**

107.     Plaintiffs incorporate and reallege the substantive allegations contained in each and every paragraph of this Complaint.

108.     Defendant, by its use of "unlawful, unfair or fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising," engaged in acts of unfair competition, in violation of California's Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200, *et seq.*

109.     Specifically, Defendant's conduct violated the "unfair" prong of the UCL because Defendant knowingly embedded performance-degrading components into the iOS 10 and iOS 11 Updates without knowledge or consent of Plaintiffs and Class Members.

110.   Defendant had a duty to disclose this information because Defendant had exclusive knowledge of these material facts—which were not known to Plaintiffs and Class Members—but actively concealed it from Plaintiffs and Class Members.

111.   Any purported benefits of the iOS 10 and iOS 11 Updates do not outweigh Defendant's unfair acts or practices and the harm suffered by Plaintiffs and Class Members.

112.   As a direct and proximate result of Defendant's unfair and unlawful, conduct, Plaintiffs and Class Members, suffered economic damages and other harm, including, but not limited to, loss of use and enjoyment of their iPhones, significant decrease of value, and losses in the form of costs to upgrade or otherwise replace their iPhones.

113.   Plaintiffs and Class Members could not have reasonably avoided these damages because Defendant unscrupulously concealed the true nature of the iOS 10 and iOS 11 Updates.

114.   Defendant's conduct also violated the "fraudulent" prong of the UCL because Defendant made false and fraudulent statements and omissions as to the benefits of the iOS 10 and iOS 11 Updates to coerce Plaintiffs and Class Members to install them onto iPhones that Defendant knew lacked adequate processing power.

115.   Specifically, Prior to the release of its iOS 10 operating system, Defendant's represented the update "make[s] everything you love about your iPhone and iPad even better," that and "in iOS 10, accessing the information you need is easier and quicker than ever before." Defendant's subsequent iOS 10.2.1 update, however, slowed the Affected Phones' processing speed, making "accessing the information you need" slower than before.

116.   Prior to the release of its iOS 11 operating system, Defendant also represented that the update "makes iPhone better than before" and that with "iOS 11, iPhone and iPad are the most powerful, personal, and intelligent devices they've ever been." But Defendant's subsequent iOS 11.2 update weakened the Affected Phones' processing power.

117.   Defendant's fraudulent representations and omissions concerning the purported benefits of the iOS 10 and iOS 11 Updates were misleading and were likely to, and in fact did, have the effect of deceiving not only Plaintiffs and Class Members, by the public at large.

118.     Upon information and belief, the fraudulent representations and omissions concerning the purported benefits of the iOS 10 and iOS 11 Updates emanated from or were approved by Defendant's corporate headquarters located in California.

119.     Plaintiff's and Class Members reasonably relied on Defendant's fraudulent representations and omissions concerning the purported benefits of the iOS 10 and iOS 11 in deciding whether to install the updates onto their iPhones.

120.     As a direct and proximate result of Defendant's fraudulent representations and omissions, Plaintiffs and Class Members, suffered economic damages and other harm, including, but not limited to, loss of use and enjoyment of their iPhones, significant decrease of value, and losses in the form of costs to upgrade or otherwise replace their iPhones.

121.     Therefore, Plaintiff and Class Members seeks to enjoin further unfair acts or practices by Defendant under CAL. BUS. & PROF. CODE § 17200, and asks the Court to award Plaintiff and Class Members restitution, as provided in CAL. BUS. & PROF. CODE § 17203, in an amount necessary to restore to Plaintiff and Class Members what has been acquired by Defendant through its unfair and fraudulent acts or practices.

<u>COUNT SIX</u>
**Violation of the California's False Advertising Law,**
**CAL. BUS. & PROF. CODE § 17500, *et seq.***
**(On Behalf of the Nationwide Class, or alternative, the State Subclasses, and Canadian Class)**

122.     Plaintiffs incorporate and reallege the substantive allegations contained in each and every paragraph of this Complaint.

123.     California's False Advertising Law ("FAL"), CAL. BUS. & PROF. CODE § 17500, *et seq.* proscribes the dissemination of any statement by a corporation "in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

124.    The FAL can apply equally to true statements, if those statements omit other relevant information and are made in a manner that is likely to mislead or deceive a reasonable consumer.

125.    As referenced herein, Defendant has engaged in a systematic campaign of advertising and marketing the purported benefits of the iOS 10 and iOS 11 Updates. In connection with the sale of its iPhones, Defendant disseminated or caused to be disseminated false, misleading, and deceptive advertising regarding the iOS 10 and iOS 11 Updates to the general public through various forms of media. However, Defendant knew or reasonably should have known that the iOS 10 and iOS 11 Updates did not improve the Affected Phones, and its failure to disclose the corresponding performance and process degradation was a material omission.

126.    When Defendant disseminated the advertising described herein, it knew, or by the exercise of reasonable care should have known, that the statements concerning the iOS 10 and iOS 11 Updates were untrue or misleading, and omitted to state the truth about the performance and process degradation, in violation of the False Advertising Law, Cal. Bus. & Prof. Code § 17500, et seq.

127.    Upon information and belief, the false, misleading, and deceptive advertising regarding the iOS 10 and iOS 11 Updates emanated from or were approved by Defendant's corporate headquarters located in California.

128.    As a proximate result of Defendant's conduct, Plaintiffs and Class Members were exposed to these misrepresentations, omissions and partial disclosures, updated their iPhones in reliance on these misrepresentations, omissions and partial disclosures, and suffered monetary loss as a result. They would not have would not have upgraded their iPhones to iOS 10 and/or iOS 11, or would have simply replaced the aging batter, had they known the truth regarding the actual purpose of the iOS 10 and iOS 11 Updates.

129.    As a direct and proximate result of Defendant's false advertising, Plaintiffs and Class Members, suffered economic damages and other harm, including, but not limited to, loss of

use and enjoyment of their iPhones, significant decrease of value, and losses in the form of costs to upgrade or otherwise replace their iPhones.

130.    Therefore, Plaintiff and Class Members seeks to enjoin further unfair acts or practices by Defendant under CAL. BUS. & PROF. CODE § 17500, and asks the Court to award Plaintiff and Class Members restitution, as provided in CAL. BUS. & PROF. CODE § 17535, in an amount necessary to restore to Plaintiff and Class Members what has been acquired by Defendant through its unfair and fraudulent acts or practices.

**COUNT SEVEN**
**Breach of Express Warranty Under the Magnuson-Moss Warranty Act,**
**15 U.S.C. § 2301, et seq.**
**(On Behalf of the Nationwide Class, or alternative, the State Subclasses)**

131.    Plaintiffs incorporate and reallege the substantive allegations contained in each and every paragraph of this Complaint.

132.    The Magnuson-Moss Warranty Act ("Magnuson-Moss"), 15 U.S.C.§ 2301, *et seq.*, provides a private right of action for purchasers of consumer products against manufacturers or retailers who, among other things, fail to comply with the terms of a written or implied warranty. 15 U.S.C. § 2310(d)(1).

133.    Plaintiffs and Class Members are "consumers," as that term is defined in § 2301(3) of Magnuson-Moss.

134.    Defendant is a "supplier" and "warrantor," as those terms are defined in § 2301(4)-(5) of Magnuson-Moss.

135.    The Affected Phones are "consumer products," as that term is defined in § 2301(1) of Magnuson-Moss.

136.    The Affected Phones were covered by written and implied warranties, as those terms are defined in §§ 2301(6), (7) of Magnuson-Moss.

137.    As set forth herein, Defendant breached their warranties with Plaintiffs and Class Members.

138.    Defendant had reasonable and adequate notice of Plaintiffs' and the Class's claims of breach of Defendant's express written warranty from the sale of the Affected Phones, and was given a reasonable opportunity to cure its failure to comply with that warranty.

139.    However, Defendant never cured by, for example, allowing Plaintiffs and Class Members to "roll back" the Affected Phones to an earlier version of the iOS to restore performance and processing speed. Instead, after disclosing to the public that it had been negatively degrading the Affected Phones performance, Plaintiff simply offered replacement batteries as a reduced price. Unfortunately, this was done after Plaintiffs and Class Members had already incurred economic damages by replacing or repairing the Affected Phones.

140.    Defendant's breach of the express and implied warranties deprived Plaintiff and Class Members of the benefits of their bargains. The amount in controversy of the Plaintiffs' and Class Members' individual claims meets or exceeds the sum or value of $25. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

141.    As a result of Defendant's breach of its express and implied warranties through Magnuson-Moss, Plaintiffs and Class Members are entitled to legal and equitable relief against Defendants, including damages, specific performance, attorneys' fees, costs, and other relief in a measure and amount to be determined by the Court.

### COUNT EIGHT
**Breach of the *Consumer Protection Act* and *Competition Act*,
together with their analogue enforcing provincial statutes.
(On Behalf of the Canadian Class)**

142.    Plaintiffs incorporate and reallege the substantive allegations contained in each and every paragraph of this Complaint.

143.    Defendant's actions constitute false, misleading, or deceptive representations.

144.    Defendant falsely and publicly represented that the iOS 10 and iOS 11 Updates had characteristics, benefits, or qualities that the updates, and by extension the affected iPhones, did not have.

145.     Defendant falsely and publicly represented that the iOS 10 and iOS 11 Updates, and by extension the affected iPhones, were of a particular standard and quality that they were not.

146.     Defendants' representations about the iOS 10 and iOS 11 Updates, and by extension the affected iPhones, used exaggeration, innuendo, or ambiguity as to one or more material facts, or failed to state one or more material facts, in a manner that tended to deceive the members of the Canadian Class.

147.     In addition or in the alternative, Defendant expressly and falsely warranted to the members of the Canadian Class that the iOS 10 and iOS 11 Updates, and by extension the affected iPhones, were of high quality but provided a product subject to a known defect that made those products not of high quality.  Defendant knowingly sold those defective products without informing consumers about the known defect.

148.     These misrepresentations and false warranties constitute violations of sections 14 and 17 of the Canadian *Consumer Protection Act*, 2002 (S.O. 2002) and section 52 of the Canadian *Competition Act*, (R.S.C., 1985, c. C-34), and their parallel provincial enforcing laws.[9]

149.     Formal notice is not required pursuant to sections 18(5) and 1010 of the *Consumer Protection Act, 2002*, and the parallel provisions of the provincial enforcing laws.

---

[9] Specifically, those provincial laws are:  *Fair Trading Act,* R.S.A. 1000. C. F-2 (Alberta); *Business Practices and Consumer Protection Act,* S.B.C. 2004, c. 2 (British Columbia); *The Business Practices Act,* C.C.S.M. c. B120, c. 2 and *The Consumer Protection Act,* C.C.S.M. c. C200 (Manitoba); *Consumer Product Warranty and Liability Act,* S.N.B. 1978, c. C-18.1 (New Brunswick); *Consumer Protection and Business Practices Act,* S.N.L. 2009, c. C-31.1 (Newfoundland and Labrador); *Consumer Protection Act,* R.S.N.W.T. 1988, c. C-17 (Northwest Territories); *Consumer Protect Act,* R.S.N.S., c. 92 (Nova Scotia); *Consumer Protection Act,* R.S.N.W.T. (Nu) 1988, c. C-17 (Nunavut); *Consumer Protection Act, 2002,* S.O. 2002, c. 30, Sched. A (Ontario); *Business Practices Act,* R.S.P.E.I. 1988, c. B-7 (Prince Edward Island); *The Consumer Protection and Business Practices Act,* S.S. 2014, c. C-30.2 (Saskatchewan); *Consumers Protection Act,* R.S.Y. 2002, c. 40 (Yukon).  On information and belief, the source of which is Canadian co-counsel at the McKenzie Lake law firm located in Ontario, each of these provincial parallel laws are treated by Canadian courts as having, in relevant part, elements and defenses legally equivalent to the national *Consumer Protection Act* and *Competition Act*, described in text above.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all Class Members proposed in this Complaint, respectfully requests that the Court enter judgment in their favor against Defendant as follows:

A.    For an Order certifying the Nationwide Class, or in the alternative, the State Subclasses, and Canadian Class as defined herein, and appointing Plaintiffs and their counsel to represent Class Members;

B.    For an award of actual damages and compensatory damages, in an amount to be determined;

C.    For an award of costs of suit and attorneys' fees, as allowable by law; and

D.    Such other and further relief as this Court may deem just and proper.


Dated: February 7, 2018.                    Respectfully submitted,

                                            DIAMOND MCCARTHY LLP

                                            By: */s/Christopher D. Sullivan*
                                                **Christopher D. Sullivan**
                                                ***Attorneys for Plaintiffs[10]***

---

[10] As referenced herein, Canadian co-counsel has advised the undersigned counsel on matters of Canadian law. Plaintiffs plan to seek limited *pro hac vice* admission for Canadian co-counsel to assist in addressing those matters insofar as they are disputed or of interest to the Court. *See, e.g., Agjunction, LLC v. Agrain, Inc.*, No. 14-2069-JAR, 2014 WL 1745498, *passim* (D. Kan. May 1, 2014) (admitting Canadian attorneys *pro hac vice* for limited purposes where the Court anticipated considering issues of Canadian law). Canadian co-counsel consists of Michael J. Peerless and Matthew Baer of the firm McKenzie Lake Lawyers LLP, located at 1800-140 Fullarton Street, London, Ontario.

## DEMAND FOR JURY TRIAL

Based on the foregoing, Plaintiffs, of behalf of themselves and all others similarly situated, hereby demand a jury trial for all claims so triable.

Dated: February 7, 2018.                    Respectfully submitted,

                                            **DIAMOND MCCARTHY LLP**

                                            By: */s/Christopher D. Sullivan*
                                                **Christopher D. Sullivan**
                                                ***Attorneys for Plaintiffs[11]***

---

[11] As referenced herein, Canadian co-counsel has advised the undersigned counsel on matters of Canadian law.  Plaintiffs plan to seek limited *pro hac vice* admission for Canadian co-counsel to assist in addressing those matters insofar as they are disputed or of interest to the Court.  *See, e.g., Agjunction, LLC v. Agrain, Inc.*, No. 14-2069-JAR, 2014 WL 1745498, *passim* (D. Kan. May 1, 2014) (admitting Canadian attorneys *pro hac vice* for limited purposes where the Court anticipated considering issues of Canadian law).  Canadian co-counsel consists of Michael J. Peerless and Matthew Baer of the firm McKenzie Lake Lawyers LLP, located at 1800-140 Fullarton Street, London, Ontario.